UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

THE INDEPENDENCE PROJECT, INC., a
New Jersey Non-Profit Corporation,
and JOHN MEGGS, an Individual,

    Plaintiffs,

vs.

BRIDLE DEVELOPMENT CORPORATION,
a Domestic For Profit Corporation,

    Defendant.

Case No.   4:18-cv-1639

## COMPLAINT

Plaintiffs, THE INDEPENDENCE PROJECT, INC., a New Jersey Non-Profit Corporation, and JOHN MEGGS, an Individual, on their behalf and on behalf of all other mobility impaired individuals similarly situated ("Plaintiff" or "Plaintiffs"), hereby sue the Defendant, BRIDLE DEVELOPMENT CORPORATION, a Domestic For Profit Corporation ("Defendant"), for injunctive Relief, damages, attorney's fees, litigation expenses, and costs pursuant to the Americans with Disabilities Act, 42 U.S.C. §12181 *et seq.*

### COUNT I
### VIOLATION OF TITLE III OF THE
### AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12181, *et seq.*

1.    This is an action for declaratory and injunctive relief pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq. ("ADA").

2.    Venue is properly located in this Court; Eastern District of Missouri, Eastern Division pursuant to 28 U.S.C. §1391(b) and E.D. Mo. L.R. 3 - 2.07.  Venue lies in the judicial district of the property situs.  The Defendant's property is located in and does business within this judicial district.

1

3.	All events giving rise to this lawsuit occurred in the Eastern District of Missouri, within the boundaries of Saint Louis County, Missouri.

4.	Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. §1343, this Court has been given original jurisdiction over actions which arise from the Defendant's violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq*.  See also 28 U.S.C. § 2201 and § 2202.

5.	Plaintiff, JOHN MEGGS, is an individual residing at 1128 Maynard Drive, Duarte, California, 91010, in the County of Los Angeles.

6.	Plaintiff, THE INDEPENDENCE PROJECT, INC., is a nonprofit corporation formed under the laws of the State of New Jersey.  THE INDEPENDENCE PROJECT, INC. maintains is principal office at 1002 Central Ave, New Providence, New Jersey 07947, in the County of Union.

7.	Defendant, BRIDLE DEVELOPMENT CORPORATION, holds title to the subject property alleged by the Plaintiffs to be operating in violation of Title III of the ADA.

8.	The Defendant's property, also known as Surrey Plaza I located at 2520-2686 North Highway 67, Florissant, MO 63033 and Surrey Plaza II located at 2710-2800 North Highway 67, Florissant, Missouri 63033 (together being known as the "Subject Property").

9.	Plaintiff, JOHN MEGGS is a California resident, is sui juris, and qualifies as an individual with disabilities as defined by the ADA.  Mr. Meggs is a paraplegic as the result of a spinal cord injury and requires a wheelchair for mobility at all times.

10.	Plaintiff operates a business incorporated in the State of Missouri with its registered business address and his business partners' home address both being 2236 Renault Drive, Apartment C, St. Louis, Missouri 63146.

11.	Plaintiff regularly visits St. Louis for pleasure and to conduct business; Mr. Meggs is

a dee-jay, internet radio host, podcast host and musical talent scout. Mr. Meggs regularly visits the St. Louis area to promote these endeavors and search for new musical talent by attending live musical events across the Greater Saint Louis area.

12. Mr. Meggs is an extensive traveler by air, bus, and train. Mr. Meggs makes several trips to the St. Louis area per year by air from Los Angeles. These trips last, on average, 2-3 weeks after which Mr. Meggs travels by bus or train to visit his extensive family in the Kansas City area before returning home to Los Angeles by air. At this time, Mr. Meggs has return visits to the St. Louis area scheduled for October and November of 2018 and May and June of 2019, during which he will stay at area hotels or at his business partner's home.

13. Location of the Subject Property is in close proximity to that of St. Louis Lambert International Airport and the hotels in the surrounding area where Mr. Meggs often stays during his frequent visits.

14. Plaintiff has visited the subject property that forms the basis of this lawsuit on several occasions with his last visit occurring in July 2018. Mr. Meggs plans to return to the subject property during his next visit to the area in order to avail himself of the goods and services offered to the public at the property.

15. Plaintiff has encountered architectural barriers at the subject property. The barriers to access at the property have endangered his safety. The plaintiff is also a member of the plaintiff organization, THE INDEPENDENCE PROJECT, INC., discussed below in paragraph 16, and acts as a tester on their behalf to ensure the compliance of public accommodations under the Americans with Disabilities Act.

16. Plaintiff, THE INDEPENDENCE PROJECT, INC. is a nonprofit New Jersey corporation. Members of this organization include individuals, residing across the United States,

with disabilities as defined by the ADA.  The purpose of this organization is to represent the interest of its members across the United States by assuring places of public accommodation are accessible to and usable by, the disabled and that its members are not discriminated against because of their disabilities.

17.   THE INDEPENDENCE PROJECT, INC. and its members have suffered and will continue to suffer direct and indirect injury as a result of Defendant's discrimination until Defendant has been compelled to comply with the requirements of the ADA.  One or more of its members has suffered an injury that would allow it to bring suit in its own right.  THE INDEPENDENCE PROJECT, INC. has also been discriminated against due to its association with its disabled members and their claims.

18.   Defendant, BRIDLE DEVELOPMENT CORPORATION, owns, leases, leases to, or operates a place of public accommodation as defined by the ADA and the regulations implementing the ADA, 28 CFR 36.201(a) and 36.104.  Defendant is responsible for complying with the obligations of the ADA.  The places of public accommodation that the Defendant owns, operates, leases or leases to are known as Surrey Plaza I located at 2520-2686 North Highway 67, Florissant, MO 63033 and Surrey Plaza II located at 2710-2800 North Highway 67, Florissant, Missouri 63033.

19.   THE INDEPENDENCE PROJECT, INC. and JOHN MEGGS have a realistic, credible, existing and continuing threat of discrimination from the Defendant's non-compliance with the ADA with respect to this property as described but not necessarily limited to the allegations in paragraph 20 of this complaint.  Plaintiffs have reasonable grounds to believe that they will continue to be subjected to discrimination in violation of the ADA by the Defendant.  JOHN MEGGS desires to visit the subject property, not only to avail himself of the goods and services available at the property but to assure himself that this property is in compliance with the ADA so that he and others

similarly situated will have full and equal enjoyment of the property without fear of discrimination.

20. Defendant has discriminated against the individual Plaintiff and members of the corporate Plaintiff by denying them access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the property, as prohibited by 42 U.S.C. § 12182 *et seq*.

21. Defendant has discriminated, and is continuing to discriminate, against the Plaintiff in violation of the ADA by failing to, *inter alia*, have accessible facilities by January 26, 1992 (or January 26, 1993, if Defendant has 10 or fewer employees and gross receipts of $500,000 or less). A preliminary inspection of subject property has shown that violations exist.

22. The violations contained at each of the Defendant's locations and throughout each tenant space are quite similar and require remediation in order to be compliant with the ADA. These are the barriers to access that JOHN MEGGS personally encountered, including, but not limited to the following:

**Dairy Queen**
(Located within Surrey Plaza I)

**Parking and Exterior Accessible Route**

a. Parking spaces throughout the parking lot and those designated as accessible at Dairy Queen are not maintained, are located on a slope, lack compliant access aisles and fail to provide a compliant accessible route, violating Sections 402, 502 and 502.4 of the 2010 ADA Standards. These conditions, during several visits, prevented Mr. Meggs from unloading from his vehicle freely and safely.  On certain occasions, he would park away from the accessible parking at Dairy Queen so he could access the property safely.

b. Curb ramps provided at Dairy Queen are unsafe for wheelchair users and are not provided at all in some areas. The curb ramps that are provided contain excessive slopes, abrupt changes of level

and lack level landings, violating Sections 402 and 406 of the 2010 ADA Standards. Mr. Meggs dealt with a lack of maneuvering space at the top of the curb ramp. Mr. Meggs uses a manual wheelchair, so he is severely impeded by improper curb ramps. The preceding conditions make curb ramps dangerous for Mr. Meggs.

    c.   The exterior accessible route from parking spaces at Dairy Queen fails to provide a safe accessible route to ramps or curb ramps, violating Section 402 of the 2010 ADA Standards. Mr. Meggs was forced to travel around obstacles and through the traffic area of the parking lot in order to access the curb ramp.

**Access to Goods and Services**

    d.   Dairy Queen fails to provide Mr. Meggs with accessible dining tables, violating Section 902 of the 2010 ADA Standards. Mr. Meggs was unable to dine comfortably due the lack of accessible tables.

    e.   Entering Dairy Queen is impeded by a lack of maneuvering space, violating Sections 402 and 404 of the 2010 ADA Standards. Due to this lack of maneuvering space, Mr. Meggs was unable to enter the restaurant without assistance.

**Restrooms**

    f.   Restrooms at Diary Queen were reported to be unsafe for use by Mr. Meggs. Inspection revealed Mr. Meggs was unable to use the restrooms safely due to a lack of accessibility. Restrooms at Diary Queen contain inaccessible water closets which lack proper controls, improper signage and a lack of wheelchair maneuvering space in violation of Section 601 of the 2010 ADA Standards.

    g.   Mr. Meggs was unable to use the dispensers at Dairy Queen. The restroom at Dairy Queen provides dispensers which are beyond the reach of wheelchair users and are inaccessible to Mr. Meggs, violating Section 308 of the 2010 ADA Standards.

h.  The lavatories in the Dairy Queen restroom lack proper knee clearance and accessibility in violation of Section 308 of the 2010 ADA Standards. Mr. Meggs was unable to freely access the lavatory which prevented him from washing his hands before exiting the restroom.

i.  Dairy Queen provides restrooms that contain improper centerlines for the water closets and dispensers which are improperly located, impeding access to the grab bars. These conditions are in violation of Section 604 of the 2010 ADA Standards. Improper centerlines and inaccessible grab bars make the transition from his wheelchair to the water closet exceedingly difficult for Mr. Meggs and present him with the danger of a fall. During past visits the preceding conditions have prevented Mr. Meggs from using the water closet.

j.  The restroom door at Diary Queen is impeded by a lack of maneuvering clearance, violating Section 404 of the 2010 ADA Standards. Mr. Meggs is unable to exit the restroom without assistance due to this lack of maneuvering clearance; thus, he cannot enter the restroom alone and enjoy any sort of privacy.

### Surrey Plaza I

**Parking and Exterior Accessible Route**

k.  Parking spaces adjacent Family Dollar contain slopes greater than 2.0% and fail to provide an accessible route to tenants or curb ramps, violating Sections 402, 502 and 502.4 of the 2010 ADA Standards. These conditions during several visits prevented Mr. Meggs from unloading from his vehicle freely and safely. On certain occasions Mr. Meggs would park away from the plaza to insure he could freely access his vehicle.

l.  Parking spaces throughout Surrey Plaza I are not maintained; contain slopes and lack adequate access aisles in some locations, violating Sections 502 and 502.4 of the 2010 ADA Standards. Excessive slopes within the parking spaces and along the route are a tipping hazard for

7

Mr. Meggs.

m.  Curb ramps which are provided to access the tenant stores at Surrey Plaza I are unsafe for wheelchair users, protrude into access aisles and are not provided at all in some areas of the center. The curb ramps that are present contain excessive slopes, abrupt changes of level and lack level landings, violating Sections 402 and 406 of the 2010 ADA Standards.  Mr. Meggs dealt with a lack of maneuvering space at the top of the curb ramp.  These conditions are unsafe for Mr. Meggs when he accesses the curb ramps as they present a tipping hazard.

n.  The exterior accessible route from the parking spaces at Surrey Plaza I contains abrupt changes of level, slopes beyond the allowable limits and fails to provide a safe accessible route to ramps or curb ramps, violating Section 402 of the 2010 ADA Standards.  Mr. Meggs was forced to travel through the traffic area of the center in order to access the curb ramp which adds the additional danger of facing oncoming vehicles.

o.  Surrey Plaza I fails to provide a safe accessible route to the adjacent street/sidewalk/bus stop, violating Section 206.2.1 of the 2010 ADA Standards.  The lack of a safe, accessible route renders impossible, the option of using public transportation for Mr. Meggs.

**Access to Good and Services**

p.  Subway fails to provide accessible dining tables for those in wheelchairs, violating Section 902 of the 2010 ADA Standards.  Mr. Meggs was unable to dine comfortably due to a lack of accessible tables.

q.  Payment counters throughout Surrey Plaza I, including those at Subway and Family Dollar, are mounted beyond the reach of Mr. Meggs, violating Sections 308 and 904 of the 2010 ADA Standards.

r.  The interior accessible route at Family Dollar is impeded by goods, violating Section 402 of

the 2010 ADA Standards.  Mr. Meggs was unable to travel freely and safely throughout the store.

**Restrooms**

   s.   Restrooms provided at Surrey Plaza I are improperly designed, including those within Subway, Family Dollar, Hair Suite and ATN Nails. Mr.  Meggs was unable to use the restrooms freely and safely due to a lack of accessibility, violating Section 601 of the 2010 ADA Standards. The restrooms provided contained improper water closets which lack the proper controls, and a lack of adequate maneuvering clearance. These violations affect Mr. Meggs in several ways; improper water closets prevent Mr. Moore was freely accessing the toilet and its controls while adequate maneuvering clearance is needed to freely exit the stall and restroom without assistance.

   t.   The provided restrooms at Subway, Hair Suite and ATN Nails each provide dispensers mounted beyond the reach of wheelchair users and are inaccessible to Mr. Meggs, violating Section 308 of the 2010 ADA Standards.

   u.   Lavatories located within the restrooms at Subway, Hair Suite and ATN Nails lack the proper knee clearance and accessibility preventing Mr. Meggs from freely accessing the lavatory, violating Section 606 the 2010 ADA Standards. Mr. Meggs was unable to wash his hands before exiting the restroom.

   v.   Subway, Hair Suite and ATN Nails provide restrooms that contain improper centerlines for the water closets and flush controls mounted on the wall side, violating Section 604 of the 2010 ADA Standards.  Mr. Meggs was unable to access flush controls while in the restrooms due to their improper location.

   w.  Mr. Meggs was impeded from using the restrooms doors at Family Dollar, Subway, Hair Suite and ATN Nails due to the presence of round door knobs and a lack of maneuvering clearance, violating Section 404 of the 2010 ADA Standards; levered door handles are required. These

9

restrooms all contain improper signage, also a violation of the preceding Section of the 2010 ADA Standards.

### Surrey Plaza II

**Parking and Exterior Accessible Route**

    x.  Parking spaces adjacent A+ Nails and BOHSalon contain slopes greater than 2.0% and fail to provide an accessible route to tenants or curb ramps, violating Sections 402, 502 and 502.4 of the 2010 ADA Standards. These conditions during several visits prevented Mr. Meggs from unloading from his vehicle freely and safely. On certain occasions Mr. Meggs would park away from the plaza to insure he could freely access his vehicle.

    y.  Parking spaces throughout Surrey Plaza II are not maintained; contain slopes and lack adequate access aisles in some locations, violating Sections 502 and 502.4 of the 2010 ADA Standards. Excessive slopes within the parking spaces and along the route are a tipping hazard for Mr. Meggs.

    z.  Curb ramps which are provided to access the tenant stores at Surrey Plaza II are unsafe for wheelchair users, protrude into access aisles and are not provided at all in some areas of the center. The curb ramps that are present contain excessive slopes, abrupt changes of level and lack level landings, violating Sections 402 and 406 of the 2010 ADA Standards. Mr. Meggs dealt with a lack of maneuvering space at the top of the curb ramp. These conditions are unsafe for Mr. Meggs when he accesses the curb ramps as they present a tipping hazard.

    aa. The exterior accessible route from the parking spaces at Surrey Plaza II contains abrupt changes of level, slopes beyond the allowable limits and fails to provide a safe accessible route to ramps or curb ramps, violating Section 402 of the 2010 ADA Standards. Mr. Meggs was forced to travel through the traffic area of the center in order to access the curb ramp which adds the

additional danger of facing oncoming vehicles.

bb. Surrey Plaza II fails to provide a safe accessible route to the adjacent street/sidewalk/bus stop, violating Section 206.2.1 of the 2010 ADA Standards.  The lack of a safe, accessible route renders impossible, the option of using public transportation when patronizing the Field Box Bar.

**Access to Goods and Services**

cc. Field Box Bar and No. 1 China fail to provide accessible dining tables for those in wheelchairs, a violation of Section 902 of the 2010 ADA Standards. Due to a lack of accessible tables Mr. Meggs was unable to dine comfortably.

dd. Payment counters throughout Surrey Plaza II are mounted beyond the reach of Mr. Meggs, and all wheelchair users, a violation of Sections 308 and 904 of the 2010 ADA Standards.

ee. The entering of all tenant spaces located at Surrey Plaza II is impeded by abrupt changes of level and slopes at the base, a violation of Section 404 of the 2010 ADA Standards. Abrupt changes of level present Mr. Meggs with the danger of tipping and can cause damage to his wheelchair.

**Restrooms**

ff.  Restrooms provided for public use at Surrey Plaza II including those located within Field Box Bar, A+ Nails and BOHSalon were reported to be unsafe for use by Mr. Meggs. Inspection revealed Mr. Meggs was unable to use theses restrooms safely due to a lack of accessibility.  The barriers to access include, inaccessible water closets which lack proper controls and wheelchair maneuvering space violating Section 601 of the 2010 ADA Standards. These violations affect Mr. Meggs in several ways; improper water closets prevent Mr. Moore was freely accessing the toilet and its controls while adequate maneuvering clearance is needed to freely exit the stall and restroom without assistance.

gg. Mr. Meggs was unable to use the dispensers within the restrooms at Field Box Bar, A+ Nails

and BOHSalon. These restrooms provide dispensers which are beyond the reach of wheelchair users and are inaccessible to Mr. Meggs, violating Section 308 of the 2010 ADA Standards.

hh. Lavatories located within the restrooms at Field Box Bar, A+ Nails, and BOHSalon lack the proper knee clearance and accessibility preventing Mr. Meggs from freely accessing the lavatory, violating Section 606 the 2010 ADA Standards. Mr. Meggs was unable to wash his hands before exiting the restroom.

ii. Field Box, A+ Nails, and BOHSalon provide restrooms that contain improper centerlines for the water closets and flush controls mounted on the wall side, violating Section 604 of the 2010 ADA Standards.  Mr. Meggs was unable to access flush controls while in the restrooms due to their improper location. Improper centerlines make transferring from his wheelchair dangerous because of location of the toilet is not properly aligned with the grab bars provided, this condition presents Mr. Meggs with the danger of falling or tipping.

jj. Mr. Meggs was impeded from using the restrooms doors at Field Box Bar, A+ Nails, and BOHSalon due to the presence of round door knobs and a lack of maneuvering clearance, violating Section 404 of the 2010 ADA Standards; levered door handles are required. These restrooms all contain improper signage, also a violation of the preceding Section of the 2010 ADA Standards.

23. All of the foregoing violations are also violations of the 1991 American with Disabilities Act Accessibility Guidelines ("ADAAG") and the 2010 Standards for Accessible Design, as promulgated by the U.S. Department of Justice.

24. The discriminatory violations described in paragraph 22 are not an exhaustive list of the Defendant's ADA violations.  Plaintiffs require a thorough inspection of the Defendant's place of public accommodation in order to photograph and measure all of the discriminatory acts violating

the ADA and all of the barriers to access.  The individual Plaintiff, and all other individuals similarly situated, have been denied access to, and have been denied the benefits of services, programs and activities of the Defendant's buildings and its facilities, and have otherwise been discriminated against and damaged by the Defendant because of the Defendant's ADA violations, as set forth above.

25. The individual Plaintiff, the members of the Plaintiff group, and all others similarly situated will continue to suffer such discrimination, injury and damage without the immediate relief provided by the ADA as requested herein.  In order to remedy this discriminatory situation, the Plaintiffs require an inspection of the Defendant's place of public accommodation in order to determine all of the areas of non-compliance with the Americans with Disabilities Act.

26. Defendant has discriminated against the individual and corporate Plaintiffs by denying them access to full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of its place of public accommodation or commercial facility in violation of 42 U.S.C. § 12181 *et seq.* and 28 CFR 36.302 *et seq.*  Furthermore, the Defendant continues to discriminate against the individual Plaintiff, the members of the plaintiff group and all those similarly situated by failing to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

27. Plaintiffs are without adequate remedy at law and are suffering irreparable harm.  Considering the balance of hardships between the Plaintiffs and the Defendant, a remedy in equity is

warranted. Furthermore, the public interest would not be disserved by a permanent injunction.

28. Plaintiffs have retained the undersigned counsel and are entitled to recover attorney's fees, costs and litigation expenses from the Defendant pursuant to 42 U.S.C. § 12205 and 28 CFR 36.505.

29. Defendant is required to remove the existing architectural barriers to the physically disabled when such removal is readily achievable for its place of public accommodation that have existed prior to January 26, 1992, 28 CFR 36.304(a); in the alternative, if there has been an alteration to Defendant's place of public accommodation since January 26, 1992, then the Defendant is required to ensure to the maximum extent feasible, that the altered portions of the facility are readily accessible to and useable by individuals with disabilities, including individuals who use wheelchairs, 28 CFR 36.402; and finally, if the Defendant's facility is one which was designed and constructed for first occupancy subsequent to January 26, 1993, as defined in 28 CFR 36.401, then the Defendant's facility must be readily accessible to and useable by individuals with disabilities as defined by the ADA.

30. Notice to Defendant is not required as a result of the Defendant's failure to cure the violations by January 26, 1992 (or January 26, 1993, if Defendant has 10 or fewer employees and gross receipts of $500,000 or less). All other conditions precedent have been met by Plaintiffs or waived by the Defendant.

31. Pursuant to 42 U.S.C. § 12188, this Court is provided with authority to grant Plaintiffs' request for Injunctive Relief, including an order to require the Defendant to alter the subject property to make the property readily accessible and useable to the Plaintiff and all other persons with disabilities as defined by the ADA; or by closing the property until such time as the Defendant has cured violations of the ADA.

**WHEREFORE,** Plaintiffs respectfully request:

a. The Court issue a Declaratory Judgment that determines that the Defendant, at the commencement of the subject lawsuit are in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.*

b. Injunctive relief against the Defendant including an order to make all readily achievable alterations to the facility; or to make such facility readily accessible to and usable by individuals with disabilities to the extent required by the ADA; and to require the Defendant to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

c. An award of attorney's fees, costs and litigation expenses pursuant to 42 U.S.C. § 12205.

d. Such other relief as the Court deems just and proper, and/or is allowable under Title III of the Americans with Disabilities Act.

                                                Respectfully submitted,

Dated:  September 27, 2018         /s/ Jon G. Shadinger Jr.
                                                Jon G. Shadinger Jr., Esq. (70443MO)
                                                Shadinger Law, LLC
                                                100 S 4th Street
                                                Suite 550
                                                St. Louis, MO 63102
                                                Tel. (314) 279-7416
                                                Fax (314) 898-0423

js@shadingerlaw.com
*Attorney for Plaintiffs, John Meggs and The Independence Project, Inc.*